JOHN S. ZIOBRO
Telquist, Ziobro & McMillen, PLLC
1333 Columbia Park Trail, Suite 110
Richland WA 99352
Phone: (509)737-8500
Facsimile: (509)737-9500

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Plymouth Grain Terminals, L.L.C., a Delaware limited liability company and Central Washington Corn Processors, Inc. a Washington corporation, and Paulson Commodities, Ltd., an Oregon corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>Lansing Grain Company, L.L.C., a Michigan limited liability company, Lansing Grain Company, an assumed name, LGC Grain Company, L.L.C., a Michigan limited liability company, Lansing Trade Group, L.L.C., a Delaware Limited liability company,<br><br>Defendants. | **VERIFIED COMPLAINT** |

Plymouth Grain Terminals, L.L.C. ("PGT"), Central Washington Corn Processors, Inc. ("CWCP") and Paulson Commodities, Ltd. ("PC") (hereinafter collectively "Plaintiffs") complains against Lansing Grain Company, LLC, Lansing Grain Company, LGC Grain Company, LLC and Lansing Trade Group, LLC as follows:

Verified Complaint
Page 1 of 12

TELQUIST, ZIOBRO & MCMILLEN, PLLC
1333 Columbia Park Trail, Suite 110
Richland, Washington 99352
PH: 509.737.8500
FAX: 509.737.9500

## INTRODUCTION

1. Plaintiffs bring this action against Lansing Grain Company, LLC and Lansing Trade Group, LLC (hereinafter collectively "Lansing") for injunctive and other relief. Plaintiffs also bring this action for damages they have incurred as a result of Lansing's unlawful actions.

## PARTIES

2. PGT is a Delaware limited liability company with an Oregon principal place of business.

3. PGT is also known as TI 48-130-6798, which is its tax identification number.

4. Central Washington Corn Processors, Inc. is a Washington corporation with a principal place of business in Washington.

5. Paulson Commodities, Ltd. is an Oregon corporation with a principal place of business in Oregon.

6. Lansing Grain Company, L.L.C., was a Michigan limited liability company. Lansing Grain Company, L.L.C. merged out of existence several years ago.

7. Lansing Grain Company is an assumed name, registered to do business in Michigan.

8. LGC Grain Company, L.L.C., is a Michigan limited liability company.

9. Lansing Trade Group, L.L.C., is a Delaware limited liability company.

TELQUIST, ZIOBRO & MCMILLEN, PLLC
1333 Columbia Park Trail, Suite 110
Richland, Washington 99352
PH: 509.737.8500
FAX: 509.737.9500

10. Upon information and belief, Lansing Trade Group, L.L.C. may have merged with Lansing Grain Company (hereinafter, the Lansing companies will collectively be "Lansing.")

## JURISDICTION

11. This Court has jurisdiction pursuant to 28 U.S.C. §1332 based upon diversity of citizenship, the matter in controversy is between citizens of different states and damages exceed the sum of $75,000.00 exclusive of interest and costs.

12. Venue is proper pursuant to 28 U.S.C. § 1391 since the events giving rise to the claims occurred in this judicial district.

## FACTS

13. PGT is a company that was formed to receive the profits from the partners involved in this dispute.

14. CWCP is a company in the business whose operations insource corn grinding.

15. PC is a company that, inter alia, brokers grain between buyers and sellers. Its principal officer holds a broker's license.

16. AgriNW is an elevator facility and corn trading company owned by the Mormon Church which operates out of the City of Plymouth, in Benton County, Washington.

17. The Plaintiffs were in need of partnering with a company that could help finance a large high speed corn handling and merchandising operation.

18. CWCP contacted Lansing Grain Company, L.L.C., and spoke with Chuck Lapke and William Krueger from Lansing in Kansas City.

Verified Complaint
Page 3 of 12

TELQUIST, ZIOBRO & MCMILLEN, PLLC
1333 Columbia Park Trail, Suite 110
Richland, Washington 99352
PH: 509.737.8500
FAX: 509.737.9500

19.     CWCP agreed, as part of the PGT and Lansing agreement, to finance and built a corn grinder at the AgriNW facility. CWCP paid approximately $1.2 million to build the corn grinder.

20.     PC was brokering the corn between buyers (i.e. feedlots, dairies and ranchers) and the seller (Lansing.)

21.     PGT and Lansing entered into a Corn Marketing Agreement (hereinafter "Agreement"), in counterparts, on or about May 19, 2003 and June 20, 2003.

22.     The Agreement provided that Lansing would be entitled to the first $75,000 in net operating profits and the remaining net operating profits would be split between PGT and Lansing with sixty percent (60%) to Lansing and forty percent (40%) PGT.

23.     PGT would provide destination marketing, truck logistics coordination, and receivable collection services.

24.     Lansing would provide railroad shuttle transfer services, corn marketing expertise and management, accounting and credit services, and most importantly, operating capital.

25.     Lansing was required to report the net operating profits or losses on a profit and loss statement specifically relating to this joint venture, which was then to be provided monthly to PGT.

26.     Profits and losses for each year were to be distributed by January 30th of the following year.

27.     On October 30, 2003, the parties amended their original contract (hereinafter "Amendment".)

Verified Complaint
Page 4 of 12

TELQUIST, ZIOBRO & MCMILLEN, PLLC
1333 Columbia Park Trail, Suite 110
Richland, Washington 99352
PH: 509.737.8500
FAX: 509.737.9500

28. Since 2002, PGT has initiated approximately 30 telephone calls each week from its offices in Portland, Oregon to Lansing's office in Overland Park, Kansas.

29. Since 2002, Lansing has initiated approximately 15 to 20 telephone calls each week from its offices in Overland Park, Kansas to PGT's physical location in Portland, Oregon.

30. For the first few years, Lansing complied with the terms of the Agreement, as amended, in providing P&L statements. However, PGT notified Lansing that those statements were suspect and requested further information. Lansing refused to provide further details.

31. For the last four years, Lansing has refused to provide any profit and loss statements for the partnership. Lansing has refused to provide any documentation, including but not limited to documents reflecting its contracts, values, transload cost, interest, grade and freight discounts, shrink, mix and blend, and other expenses relating to the joint venture.

32. About a year after Lansing ceased providing P & L statements, it also decided that it would cut out PC and buy grain on its own so, upon information and belief, so PC would not know the purchase price.

33. Up until this year, Lansing continued to utilize PC to broker corn sales.

34. Commencing in July, 2009 Lansing intentionally and without Plaintiffs consent, began to contact PC's customers and sold to them directly, effectively cutting out the Plaintiffs from any profit, undermining the partnership, and telling PC's customers that they did not have to pay PC any past due receivables if the customers would buy directly from Lansing.

Verified Complaint
Page 5 of 12

TELQUIST, ZIOBRO & MCMILLEN, PLLC
1333 Columbia Park Trail, Suite 110
Richland, Washington 99352
PH: 509.737.8500
FAX: 509.737.9500

35. In approximately July, 2009 PC stopped brokering corn sales for the partnership.

36. At all times during the course of the partnership, PC owned a list of buyers as its trade secret and proprietary information. PC would find buyers and then contact Lansing to purchase enough corn to satisfy buyer's needs. Lansing would buy corn to hedge the sale. PC charged the partnership .015 per unit for commission. PC would then write a broker's contract between the buyer and Lansing.

37. Lansing executed these trades but refused to provide information to the partnership on what they paid for the corn and what it was hedged for.

38. The corn that was brokered would then be ground at the AgriNW facility by CWCP.

39. CWCP would then charge Lansing directly for the corn it ground.

40. Lansing was not to have any employees at CWCP's grinder at the AgriNW facility. The employees on site were to be only CWCP's employees.

41. Lansing then hired one employee the second year of the partnership, apparently to undermine the partnership, and the employee, upon information and belief, was to buy and sell corn without utilizing Plaintiffs. The employee was physically located at CWCP's grinder facility on the AGriNW site. Plaintiffs objected and the employee was apparently terminated.

42. In 2009, Lansing, upon information and belief, hired a person to grind corn solely for Lansing's benefit. Lansing had placed a portable grinder within very close proximity to PGT's grinder at the AgriNW facility.

Verified Complaint
Page 6 of 12

TELQUIST, ZIOBRO & MCMILLEN, PLLC
1333 Columbia Park Trail, Suite 110
Richland, Washington 99352
PH: 509.737.8500
FAX: 509.737.9500

43. Lansing also began to directly contact PC's customers from PC's customer lists.

44. Lansing purposefully and with intent, has undercut PC's prices, and taken away PC's business, effectively misappropriating all profits owed to PGT under the parties Agreement, and owed to the partnership.

45. CWCP's $1.2 million grinder now sits idle because of Lansing's interference with the Plaintiff's business relationships as well as the partnership.

## COUNT I:  BREACH OF CONTRACT

Plaintiffs restate and reallege Paragraphs 1 through 45 above as though fully set forth herein and states and alleges as follows:

46. PGT and Lansing entered into a contract, and later amended their agreement.

47. Lansing breached the terms of the Agreement, as amended.

48. PGT has been damaged by Lansing's breach in an amount to be determined at trial.

## COUNT II:  BREACH OF FIDUCIARY DUTY

Plaintiffs restate and reallege Paragraphs 1 through 48 above as though fully set forth herein and states and alleges as follows:

49. Lansing has a fiduciary duty to the partnership.

50. Lansing has a duty to disclose material facts to the partnership.

51. Lansing has a duty to not be silent as to business matters.

52. PGT has a right, among other things, to a true and full disclosure regarding the state of the business affairs relating to their joint venture.

Verified Complaint
Page 7 of 12

TELQUIST, ZIOBRO & MCMILLEN, PLLC
1333 Columbia Park Trail, Suite 110
Richland, Washington 99352
PH: 509.737.8500
FAX: 509.737.9500

53. The Plaintiffs placed their trust and confidence in Lansing.

54. Lansing breached its fiduciary duty to the partnership.

## COUNT III: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiffs restate and reallege Paragraphs 1 through 54 above as though fully set forth herein and states and alleges as follows:

55. Lansing has a duty to act in good faith and fair dealing in performing its obligations under the Agreement and the parties' partnership.

56. Lansing failed to act in good faith and fair dealing by not disclosing expenses and profits to PGT.

57. Lansing failed to act in good faith and fair dealing by not providing monthly profit and loss statements to PGT.

58. Lansing failed to act in good faith and fair dealing by not providing year-end profit and loss statements to PGT.

59. Lansing failed to act in good faith and fair dealing when it included other items in the profit and loss statements it did provide which were not related to the partnership with PGT.

60. The Plaintiffs have been damaged by Lansing's failure to act in good faith and fair dealing in an amount to be determined at trial.

## COUNT IV – PARTNERSHIP ACCOUNTING AND RECONCILIATION OF ACCOUNTS

Plaintiffs restate and reallege Paragraphs 1 through 60 above as though fully set forth herein and states and alleges as follows:

Verified Complaint
Page 8 of 12

TELQUIST, ZIOBRO & MCMILLEN, PLLC
1333 Columbia Park Trail, Suite 110
Richland, Washington 99352
PH: 509.737.8500
FAX: 509.737.9500

61. Lansing has failed to provide an accounting partnership and a reconciliation of accounts to PGT.

62. PGT demands from Lansing an accounting, and reconciliation, as well as all monthly, and yearly profit and loss statements, and any other account statements directly or indirectly related to the partnership, and any underlying documentation, including but not limited to profits, losses, expenses, operating capital, management, and other accounting items relating to the parties' partnership for the last six years.

## COUNT V – UNJUST ENRICHMENT

Plaintiffs restate and reallege Paragraphs 1 through 62 above as though fully set forth herein and states and alleges as follows:

63. Plaintiffs have provided a benefit to Lansing.

64. Upon information and belief, Lansing has retained all of the aforementioned profits.

65. Upon information and belief, Lansing has falsified profit and loss statements to include expenses not associated with the partnership.

66. Lansing has been unjustly enriched to the detriment of Plaintiffs.

67. Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT VI – INTERFERENCE WITH PROSPECTIVE ADVANTAGE

Plaintiffs restate and reallege Paragraphs 1 through 67 above as though fully set forth herein and states and alleges as follows:

68. Lansing intentionally and improperly interfered with Plaintiffs' prospective contractual relation.

Verified Complaint
Page 9 of 12

TELQUIST, ZIOBRO & MCMILLEN, PLLC
1333 Columbia Park Trail, Suite 110
Richland, Washington 99352
PH: 509.737.8500
FAX: 509.737.9500

69. Lansing induced or caused buyers not to enter into or continue their relationship with Plaintiffs.

70. Lansing has prevented the Plaintiffs from continuing their prospective relations.

71. Plaintiffs have been harmed by Lansing's interference in an amount to be determined at trial.

## COUNT VII – MISAPPROPRIATION OF A TRADE SECRET

Plaintiffs restate and reallege Paragraphs 1 through 71 above as though fully set forth herein and states and alleges as follows:

72. PC had trade secret information in the form of customer lists and contacts.

73. Lansing acquired knowledge of PC's trade secret customer information because PC brokered the trades for PGT and Lansing.

74. Lansing used PC's trade secret information without PC's express or implied consent.

75. Lansing knew that the information was a trade secret belonging to PC and acquired the information as a result of the partnership.

76. Lansing had a duty to maintain its secrecy and not utilize it for its own purposes.

77. Upon information and belief, Lansing has monetarily benefited from using PC's trade secret information to the detriment of PC.

78. PC seeks damages as a result of Lansing's misappropriation in an amount to be determined at trial.

Verified Complaint
Page 10 of 12

TELQUIST, ZIOBRO & MCMILLEN, PLLC
1333 Columbia Park Trail, Suite 110
Richland, Washington 99352
PH: 509.737.8500
FAX: 509.737.9500

WHEREFORE, Plaintiffs request the following relief:

A. Damages for Lansing's breach of contract in an amount to be determined at trial.

B. Damages for Lansing's breach of fiduciary duty in an amount to be determined at trial.

C. Damages for Lansing's breach of good faith and fair dealing in an amount to be determined at trial.

D. Demand for an accounting and reconciliation from Lansing, including underlying documentation.

E. Damages for unjust enrichment in an amount to be determined at trial.

F. Damages for Lansing's interference with prospective advantage.

G. Damages for Lansing's misappropriation of a trade secret.

H. Injunctive relief against Lansing.

I. Reasonable fees and costs as authorized by law.

J. For such other relief as the Court deems just.

Dated: 1-28-10                    _[signature]_
                                  Steven D. Paulson
                                  TITLE:  Managing Member
                                  Plymouth Grain Terminals, LLC
                                  TITLE:  President
                                  Central Washington Corn Processors, Inc.
                                  TITLE:  President
                                  Paulson Commodities, LLC

Verified Complaint
Page 11 of 12

TELQUIST, ZIOBRO & MCMILLEN, PLLC
1333 Columbia Park Trail, Suite 110
Richland, Washington 99352
PH:  509.737.8500
FAX:  509.737.9500

By: /s/ John S. Ziobro
JOHN S. ZIOBRO, WSBA #25991
*Attorney for the Plaintiff*
TELQUIST, ZIOBRO & MCMILLEN, PLLC
1333 Columbia Park Trail, Suite 110
Richland WA  99352
Phone (509)737-8500
Facsimile (509)737-9500
john@tzmlaw.com


*In association with*
Joan M. Schulkers (*pro hac vice pending*)
Borman & Schulkers, P.L.L.P.
250 Third Avenue North
Suite 530
Minneapolis, MN  55401
612-332-3096
612-332-1398 facsimile
joan@bormanschulkers.com
Attorney for Plaintiffs

Verified Complaint
Page 12 of 12

TELQUIST, ZIOBRO & MCMILLEN, PLLC
1333 Columbia Park Trail, Suite 110
Richland, Washington  99352
PH:  509.737.8500
FAX: 509.737.9500